Argued and submitted July 22, reversed and remanded
with instructions September 21, reconsideration allowed November 30, 1983,
former opinion (65 Or App 812, 672 P2d 71) adhered to as modified,
petition for review allowed January 24, 1984 (296 Or 350)
See later issue Oregon Reports

# UTAH HOME FIRE
# INSURANCE COMPANY et al,
*Appellants,*

*v.*

# COLONIAL INSURANCE
# COMPANY OF CALIFORNIA,
*Respondent.*

(A8202-00958; CA A26054)

669 P2d 381

Randall B. Kester, Portland, argued the cause for appellants. With him on the briefs was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

James M. Callahan, Portland, argued the cause for respondent. With him on the brief was Landis, Aebi & Bailey, P.C., Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this claim for reimbursement of Personal Injury Protection (PIP) benefits, Utah Home Insurance Company (Utah) sued defendant Colonial Insurance Company (Colonial) for PIP benefits that Utah had paid to its insured, Georgia Andrews. On cross-motions for summary judgment, the trial court granted Colonial's motion and denied plaintiffs' motion. Judgment was entered for Colonial, and this appeal followed.

On October 24, 1980, while Colonial's insured, Barron, was driving Andrews' automobile, with Andrews as a passenger, a collision occurred between the Andrews vehicle and an uninsured motorist. Andrews was injured in the collision. Utah paid Andrews PIP and uninsured motorist benefits (UIM). Utah then sued Colonial for reimbursement of those benefits. Andrews joined as plaintiff, seeking recovery — under the PIP and UIM provisions of Colonial's policy with Barron — for medical expenses, wage loss and general damages. On defendant's motion, the trial court struck from the complaint plaintiffs' claims for UIM benefits. That ruling has not been appealed.

At the time of the accident, and for several weeks preceding it, Barron's vehicle had been inoperable. During that time, Barron, on occasion, had borrowed Andrews' automobile for his personal use. The Colonial policy defines "insured car" to mean:

"(8)   ＊＊＊

"＊＊＊＊＊

"(d)   any car or utility trailer you use, that is not owned by you or regularly or frequently used by you or any resident of your household, if such use is with the permission of the owner.

"(e)   any substitute car means any car or utility trailer not owned by you, a relative, or resident, being temporarily used as a substitute for any other car covered under this Part, because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction."

Under the terms of the Colonial policy, Andrews' automobile, while driven by Barron, was a "substitute car" and therefore an "insured vehicle."

Colonial concedes that, by the terms of its policy, Andrews' automobile, while driven by Barron, was an "insured vehicle" with respect to Barron's liability. Colonial asserts, however, that a PIP endorsement in its policy defines "injured persons" as persons sustaining bodily injury while occupying or using "the insured motor vehicle" with the permission of the named insured. "[T]he insured motor vehicle" is defined in Colonial's PIP endorsement as a vehicle "of which the named insured is the owner." Barron did not own the Andrews vehicle; therefore, argues Colonial, Andrews was not an "injured person" under the terms of its policy, and so she was not covered by its PIP provisions.

Utah contends that, although Colonial's PIP endorsement attempts to exclude Andrews from coverage, she is nevertheless covered because Colonial's PIP limitation violates the Oregon PIP statute, ORS 743.800 *et seq.* In support of that argument, Utah suggests that, if there were no Utah policy involved in the present case, because the Colonial coverage applies only to "owned" vehicles, Andrews would have no PIP coverage. Accordingly, Utah argues, Colonial's PIP limitation could lead to gaps in coverage and thus impermissibly thwart the purpose of ORS 743.800 *et seq.*

Andrews' Utah policy contained a "Broad Form - Named Operator" endorsement. That endorsement limits Utah's liability to only the "named insured * * * while driving any four wheel private passenger automobile whether owned or not * * *." The policy excludes coverage of any kind on any automobile "while driven by any other person."

Colonial contends that Utah's policy is incompatible with the PIP Law, ORS 743.800 *et seq,* because Utah is unlawfully attempting to avoid, through the use of the broad form named operator endorsement, its PIP coverage on its own insured's vehicle. Colonial asserts that Utah's interpretation of its policy would deprive occupants of the Andrews vehicle of PIP benefits anytime someone other than Andrews was driving and that, in the event of a single car accident, there would be no other source of PIP coverage for those occupants.

In essence, both insurers contend that each other's PIP endorsement violates the PIP law, and they each assert that if their opponent's policy was the same as their policy, no

question of PIP coverage would have arisen. We note, however, that Oregon's Financial Responsibility law, ORS 486.506(1), expressly approves both "described vehicle" and "named operator" policies.[1] *See also* ORS 486.411(1). Nevertheless, we conclude, under the facts of this case, that the language of ORS 743.800(1) and 743.810 precludes both insurers' attempts to limit their PIP coverage, and we hold those limitations to be invalid.

The PIP scheme of ORS 743.800 *et seq,* initially submitted as HB 1300, was enacted by Or Laws 1971, ch 523. Legislative history of the bill is sparse, particularly with respect to ORS 743.800 (Or Laws 1971, ch 523, § 2) and ORS 743.810 (Or Laws 1971, ch 523, § 4). The bill's legislative history does show that the statute was primarily intended to assure early payment of medical costs and lost wages that resulted from personal injuries sustained in automobile accidents. *Statement Regarding Proposals of Insurance Automobile Accidents,* Commissioner's Special Advisory Committee on Auto Insurance, by Cornelius Bateson, Subcommittee on Financial Affairs, House State and Federal Affairs Committee, exhibit 4, February 24, 1971. It further shows that ORS 743.800 was intended to mandate PIP coverage "in each policy covering private passenger motor vehicles." Presentation of HB 1300 to Subcommittee on Financial Affairs, House State and Federal Affairs Committee, Exhibit C, February, 1974. Unfortunately, these broad guidelines afford little help in resolving the convoluted issues that have arisen in the present case.

ORS 743.800(1) provides:

"(1) Every motor vehicle liability policy issued for delivery in this state that covers any private passenger motor vehicle shall provide personal injury protection benefits to the person insured thereunder, members of that person's family residing in the same household, passengers occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle. 'Personal injury protection benefits' means the benefits described in this section and ORS 743.805 and 743.815."

---

[1] ORS 486.506(1)(c) provides:

"Every certificate of insurance shall:

"(c) Describe all vehicles covered by the policy, unless such policy is issued with respect to all vehicles operated by the assured."

Under this section, the Colonial policy: (1) was "issued for delivery in this state"; (2) "cover[s] any private passenger motor vehicle," (*i.e.*, the Andrews vehicle was a "substitute car" and therefore an "insured vehicle" under the Colonial policy); and (3) insured Andrews as a "passenger occupying the insured motor vehicle." ORS 743.800 therefore mandates PIP coverage for Andrews under the Colonial policy, and Colonial's PIP limitation is invalid. Similarly, we reject Utah's attempt to limit its PIP coverage for its insured. Under the terms of ORS 743.800 and the Utah policy, Andrews is "the person insured" and has PIP coverage.

■     The remaining issue is how to distribute the liability for the PIP payments made by Utah.

ORS 743.810 provides in relevant part:

"(1)    The personal injury protection benefits with respect to:

"(a)    The insured and members of his family residing in the same household injured while occupying the insured motor vehicle shall be primary.

"(b)    Passengers injured while occupying the insured motor vehicle shall be primary.

"* * * * *

"(d)    The insured and members of his family residing in the same household injured while occupying motor vehicle not insured under the policy shall be excess.

"(e)    Pedestrians injured by the insured motor vehicle, other than the insured and members of his family residing in the same household, shall be excess over any other collateral benefits to which the injured person is entitled, including but not limited to insurance benefits, governmental benefits or gratuitous benefits."

Both Utah's and Colonial's limitations on PIP coverage being invalid, Andrews is properly viewed as "[t]he insured * * * injured while occupying the insured motor vehicle * * *"; therefore, under ORS 743.810(1)(a), the Utah policy is primary. However, Andrews was also a "[p]assenger injured while occupying the insured motor vehicle * * *" under the Colonial policy, and her coverage is therefore also primary under the Colonial policy. ORS 743.810(1)(b). Having concluded that both policies are primary with respect to Andrews' injuries, we

think it appropriate to apply the rule of *Lamb-Weston v. Ore. Auto Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959). In that case, the court required the insurance companies to pro-rate the loss in accordance with the ratio of the loss to their applicable policy limits. Here, as in *Lamb-Weston,* the ratio of the loss may be easily established by determining each insurer's PIP liability limits. If, for instance, both insurers provide the statutory PIP benefits, the ratio of the loss of each insurer is equal, and hence the liability is also equal.

Reversed and remanded with instructions that the trial court determine the limits of the PIP coverage of each insurer and pro-rate the $11,390.50 benefits paid accordingly.