Argued and submitted April 4, 1984, Court of Appeals affirmed in part and reversed in part, decision of trial court reversed, and case remanded with instructions March 11, 1986

UTAH HOME FIRE INSURANCE
COMPANY et al,
*Respondents on Review,*

.v.

COLONIAL INSURANCE COMPANY
OF CALIFORNIA,
*Petitioner on Review.*

(NO. A8202-00958, CA A26054, SC S30122)

715 P2d 1112

John C. Mercer, Portland, argued the cause for petitioner on review. On the petition were James M. Callahan and Landis, Aebi & Bailey, P.C., Portland.

Randall B. Kester, Portland, argued the cause for respondents on review. With him on the response was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

CARSON, J.

Peterson, Chief Justice, filed a dissent in which Linde, J., joined.

## CARSON, J.

This is a claim for reimbursement for payments made for personal injury protection (PIP) benefits paid by Utah Home Fire Insurance Company (Utah) to its insured, Andrews. The question is whether another insurance company, Colonial Insurance Company (Colonial), is responsible for the payment of PIP benefits to Andrews. The answer to that question depends upon whether the liability insurer of the driver of another's vehicle that is not described in the declaration section of the driver's policy must pay PIP benefits to the owner of the vehicle who was injured while a passenger in the vehicle. We answer both questions affirmatively in the circumstances of this case.

Andrews was injured while riding as a passenger in her own vehicle. Barron, Colonial's insured, was driving Andrews' vehicle with her permission on October 24, 1980, when it collided with the vehicle of an uninsured motorist. Andrews was both the owner of and a passenger in the vehicle in which the injury occurred. Andrews' liability insurance was with Utah. Only the "face sheet" of her Utah policy and a specimen of the broad form named operator endorsement to that policy are included in the record. The driver of the vehicle, Barron, had a liability policy with Colonial, and that policy is in evidence. Barron's liability policy covers Barron's use of Andrews' vehicle as a temporary substitute vehicle. However, Barron's own vehicle, a 1968 Plymouth Fury, was the only vehicle listed in Barron's liability policy.

Utah paid PIP benefits to Andrews in the amount of $6,430.20. Utah and Andrews sued Colonial, alleging that the vehicle driven by Barron was "the insured vehicle" under Colonial's insurance policy, ORS 743.800, and that Andrews was entitled to PIP benefits from Colonial, pursuant to Colonial's insurance policy and Oregon law. They further alleged that Colonial refused to pay PIP benefits to Andrews and that, as a result thereof, Utah was required to provide PIP coverage under its policy with Andrews.[1] Utah has maintained

---

[1] The action also originally included a claim for reimbursement of uninsured motorist benefits paid by Utah to Andrews. The trial court struck this part of the complaint by interlineation in response to Colonial's motion to strike. That part of the trial court's decision was not challenged upon appeal.

throughout that its first position is that Colonial's PIP obligation is primary as to Andrews and that Utah's PIP coverage of Andrews is excess.

Each party moved for summary judgment. The trial court entered summary judgment for Colonial. The Court of Appeals reversed and remanded. 64 Or App 617, 669 P2d 381 (1983). The Court of Appeals found that PIP benefits should be afforded Andrews pursuant to Colonial's policy with Barron as interpreted in light of the public policy behind the PIP statutes. The court then applied the rule of *Lamb-Weston v. Oregon Auto Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959), and required the two insurance companies to prorate the loss "in the ratio which the limits of the policies bear to the total coverage." 219 Or at 137. Here, the applicable policy limits are those for PIP benefits. 64 Or App at 622-23. The Court of Appeals then reconsidered its opinion solely to correct the amount of money involved in its review. 65 Or App 812, 672 P2d 71 (1983).

## PIP COVERAGE

As stated, Utah's policy with Andrews is not included in the record, other than the "face sheet" and a specimen of the endorsement to which reference is made on the "face sheet," which indicate that the policy provides broad form named operator coverage for Andrews. Under that type of policy, the insured has coverage while she is driving any vehicle, regardless of ownership. The determination by the Court of Appeals that Utah was partially responsible for payment of PIP benefits to Andrews is not challenged in this review. For that reason, we do not reach that issue. We assume that Andrews is entitled to PIP benefits from Utah.

We first examine the Colonial policy, for only if Andrews is entitled to PIP benefits under the Colonial policy is it necessary to determine what policy, if either, is primary. The Colonial policy extends PIP benefits to the named insured and relatives of the named insured living in the named insured's household while occupying any motor vehicle. It extends PIP benefits to other passengers only while occupying a vehicle owned by the named insured. Andrews is not entitled to PIP coverage under the specific terms of Colonial's PIP benefits because she was not occupying a vehicle owned by Barron.

That is only the beginning of the analysis, however. Utah correctly points out that Oregon statutes require that every motor vehicle liability policy issued for delivery in this state must provide PIP benefits to four classes of persons. Colonial cannot provide fewer benefits than the law requires it to provide.

ORS 743.800 provided:[2]

"Every motor vehicle liability policy issued for delivery in this state that covers any private passenger motor vehicle * * * shall provide to the person insured thereunder and members of that person's family residing in the same household injured in a motor vehicle accident, passengers injured while occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle * * * [certain listed benefits]."

The term "the insured motor vehicle" is not defined in the PIP sections of law. In determining whether Colonial's policy must extend coverage to Andrews, we must determine what the legislature meant by the term "the insured motor vehicle."

The meaning of the term "the insured motor vehicle" is not readily apparent from ORS 743.800. The reference in the statute to "the insured vehicle," by necessary implication, means the vehicle insured under the liability policy. However, the legislature may have meant, as argued by Colonial, only the vehicle named on the declarations page of the particular liability policy. On the other hand, the legislature may have meant the vehicle insured by reference to the particular liability policy itself, and not just the vehicle listed on the declarations page.

We look again at ORS 743.800. It required that PIP benefits be provided to four classes of persons:

—"the person insured thereunder [injured in a motor vehicle accident] and

—"members of that person's family residing in the same household injured in a motor vehicle accident,

—"passengers injured while occupying the insured motor vehicle and

---

[2] In 1981, subsequent to the date from which this claim arises, the legislature amended ORS 743.800 to substantially its present form. Or Laws 1981, ch 414, § 1. The amendments expressly do not apply to any liability incurred before the effective date of the amendments. Or Laws 1981, ch 414, § 5.

—"pedestrians struck by the insured motor vehicle."

All four classes of persons are required to be insured under the PIP policy, in the sense that all are entitled to benefits.

As noted, PIP coverage is statutory. The coverage aspect of this legislation did not provoke much comment when it was proposed as HB 1300 in 1971. The general tenor of comments and submissions was that ORS 743.800 would mandate PIP coverage in all Oregon automobile liability policies. *See, e.g.,* Presentation of HB 1300, Subcommittee on Financial Affairs, House State and Federal Affairs Committee, Exhibit C, 1971 (drafted by Cornelius Bateson, then Insurance Commissioner).

We turn to the basic framework of the statutory scheme involving motor vehicle liability insurance, including PIP, uninsured motorist and financial responsibility. PIP benefits are required to be included in "[e]very motor vehicle liability insurance policy issued for delivery in this state that covers any private passenger motor vehicle." ORS 743.800. *Former* ORS 486.011(11), repealed by Oregon Laws 1983, chapter 338, section 978, defined "motor vehicle liability insurance policy" to mean:

> "* * * a policy or part of a policy either designating by explicit description or by appropriate reference all motor vehicles for which coverage is provided by the policy and insuring the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles." *See* ORS 806.080(1).

The contents of a motor vehicle liability policy were also the subject of ORS 743.786 to 743.795. These sections included definitions to be used for the terms of the motor vehicle liability policy.[3] *See* Minutes, Senate Committee on Highways

---

[3] In 1979, ORS 743.786 to 743.840 were the part of ORS chapter 743 entitled "Motor Vehicle Liability Insurance." ORS 743.786 to 743.795 originally were enacted by the legislature in 1965 as HB 1041. This bill was vetoed by Governor Mark O. Hatfield. In 1967, HB 1041 was made part of HB 1506 and reenacted by the legislature as Oregon Laws 1967, chapter 842. The language of these sections examined here remains unchanged. Presently the part of ORS chapter 743 entitled "Motor Vehicle Liability Insurance" includes sections formerly found in ORS chapter 486, *see* ORS 743.776 through 743.785.

(May 23, 1967 — Testimony of Ed Smith of Farmers Insurance Group) (HB 1506 "defines terms and language used in motor vehicle policies.")

ORS 743.789:

"(1)   Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance or use of a motor vehicle shall provide uninsured motorist coverage therein or by indorsement thereon * * *."

ORS 743.792(2)(b):

"Every [motor vehicle liability] policy required to provide the coverage specified in ORS 743.789 shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions:

"* * * * *

"(2)   As used in this policy:

"* * * * *

"(b)   'Insured vehicle,' except as provided in paragraph (c) of this provision, means:

"(A)   The vehicle described in the [motor vehicle liability] policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy; or

"(B)   A nonowned vehicle operated by the named insured or spouse if a resident of the same household; provided the actual use thereof is with the permission of the owner of such vehicle and such vehicle is not owned by nor furnished for the regular or frequent use of the insured or any member of the same household.

"(c)   'Insured vehicle' does not include a trailer of any type unless such trailer is a described vehicle in the policy."[4]

---

[4] The definition of "Insured" in ORS 743.792(2)(a), had and has a narrower application, extending only to uninsured motorist coverage part of a motor vehicle

This legislative definition of "insured vehicle" to be used in motor vehicle liability policies was in existence when the PIP statutes were drafted and enacted.

■ The term "the insured motor vehicle" in the section requiring PIP coverage, ORS 743.800, does not presuppose that only a single motor vehicle could be the insured motor vehicle under any single policy. One or more motor vehicles can be covered "by explicit description or adequate reference" in a policy. The definition of "[i]nsured vehicle" in ORS 743.792(2)(b) applies throughout all motor vehicle liability policies and is not limited in application as is the definition of "Insured" (ORS 743.792(2)(a)) to the uninsured motorist coverage part of the policy. As PIP coverage is a prescribed part of every motor vehicle liability insurance policy issued for delivery in this state that covers any private passenger motor vehicle, the ORS 743.792(2)(b) definition of "insured vehicle" applies to PIP coverage as well as uninsured motorist coverage

---

liability insurance policy. ORS 743.792(2)(a) provided:

"As used in this policy:

" 'Insured,' when unqualified, means *when applied to uninsured motorist coverage:*

"(A) The named insured as stated in the policy and any person designated as named insured in the schedule and, while residents of the same household, the spouse of any such named insured and relatives of either; provided, neither such relative nor spouse is the owner of a vehicle not described in the policy; and provided further, if the named insured as stated in the policy is other than an individual or husband and wife who are residents of the same household, the named insured shall be only a person so designated in the schedule; and

"(B) Any other person while occupying an insured vehicle provided the actual use thereof is with the permission of the named insured." (Emphasis supplied.)

The emphasized language was added to HB 1041 in 1965 by the Senate Financial Affairs Committee at the suggestion of Mr. John Steelhammer. The amendment was specific and affected only the definition of "Insured." *See* Bill File for HB 1041, Senate Committee Report, April 1, 1965 and Senate Amendments to House Bill 104 by Senate Committee on Financial Affairs (April 2, 1965): Engrossed and Enrolled House Bill 1041 at page 2, line 30 (handwritten entry); Minutes, Senate Financial Affairs Committee (April 1, 1965, attachment "Senate Amendment to House Bill 1041 by Committee on Financial Affairs").

The definitions of ORS 743.786 apply to ORS 743.786 to 743.795. These sections of ORS chapter 743 deal with general requirements of motor vehicle liability insurance policies, and also specific requirements related to uninsured motorist coverage. The definition of "insured vehicle" in ORS 743.792(2)(b) is a general provision governing all motor vehicle liability insurance policies and is not limited to the part providing uninsured motorist coverage.

and generally to the entire "motor vehicle liability insurance policy" issued by Colonial.

ORS 743.792(2)(b)(A) recognizes three categories of "[i]nsured vehicle[s]": (1) the vehicle described in the policy and (2) a newly acquired vehicle or (3) a substitute vehicle as each of those terms is described in the public liability section of the policy, insured under the public liability provisions of the policy.

ORS 743.792(2)(b)(B) adds to this definition a non-owned vehicle, if "operated by the named insured * * * with permission of the owner * * * [where the] vehicle is not owned by nor furnished for the regular or frequent use of the insured * * *." *Cf. former* ORS 486.411(1)(a) (requiring proof of future responsibility to include "insuring * * * all other persons using any [covered] motor vehicle with the insured's consent.")

Therefore, if under the Colonial policy the Andrews' vehicle fits any of the categories of ORS 743.792(2)(b), then it is "the insured motor vehicle" for the purposes of PIP.

## THE COLONIAL POLICY

With this statutory interpretation in mind, we turn to the policy in question (Colonial's liability policy) to determine if, at the time in question, the vehicle being driven by Colonial's insured was "the insured motor vehicle."

The record contains an affidavit of Andrews that avers: "During the four to six weeks prior to the accident and on the day of the accident [Barron's] automobile which he owned was broken down and not driveable due to mechanical failure." Colonial concedes that Andrews' vehicle is an insured vehicle under its liability policy with Barron, because it was operated as a temporary substitute vehicle for the vehicle that Barron owned.[5] As mentioned earlier, Colonial argues that

---

[5] Barron's policy with Colonial, in the general definitions section, defines "Your insured car" to include:

"* * * any substitute *car* means any *car* or *utility trailer* not owned by *you,* a *relative,* or *resident,* being temporarily used as a substitute for any other *car* covered under this Part, because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction." (Emphasis in original.)

The term "your insured car" does not appear in the PIP endorsement of Barron's policy.

nonetheless Andrews is not entitled to PIP benefits under Colonial's policy with Barron because she is not an "injured person" under the PIP endorsement of that policy. That is so because the PIP endorsement defines "injured person" as one injured in the "insured motor vehicle," which is defined as a vehicle "of which the named insured is the owner."[6] Thus, because Andrews' vehicle was not owned by Barron, Colonial contends that Andrews, a passenger at the time of the accident, is not extended PIP coverage under the Colonial policy.

We conclude that the statutory phrase "the insured motor vehicle" includes the Andrews' vehicle under the instant circumstances, because it was operated as a temporary substitute vehicle by Barron and covered under the liability section of Barron's policy. For that reason, and because Andrews was a passenger occupying the vehicle at the time she sustained injuries, Colonial's policy with Barron provides PIP coverage for Andrews. The fact that she is not an "injured person," and that she therefore would not be entitled to PIP benefits under the terms of that policy, does not alter our decision because that policy's PIP endorsement is inconsistent with the statutory PIP scheme. The private agreement of the parties cannot override the statutory mandate. With the exceptions allowed by ORS 743.815,[7] the parties can only agree to greater PIP benefits, ORS 743.820.

## THE UTAH POLICY

On review of the granting of a motion for summary judgment, we view the record in the light most favorable to the

---

[6] Colonial has provided the affidavit of an employee of the Oregon Insurance Commissioner's Office that confirms that this policy language has been approved under ORS 743.006 and is widely used. That is a reason to review this case, but is not helpful in resolving the issue in this case. All insurance policy provisions must be so approved before they are utilized in an issued policy. ORS 743.006. Approval by the Insurance Commissioner under ORS 743.006 is no assurance that the approved language is consistent with the statutes.

[7] ORS 743.815 provided:

"(1) The insurer may exclude from the coverage for personal injury protection benefits any injured person who:

"(a) Intentionally causes self-injury; or

"(b) Is participating in any prearranged or organized racing or speed contest or practice or preparation for any such contest.

"* * * * *"

party opposing the motion.

■ There is no evidence or allegation on this record from which we can conclude that Utah would have primary PIP responsibility to Andrews. Utah admits that Andrews would be entitled to PIP benefits under its broad form named operator policy, although the policy does not insure a particular vehicle by explicit description or appropriate reference. The PIP requirements do not attach unless there is "a motor vehicle liability insurance policy * * * covering any private passenger motor vehicle," ORS 743.800. By definition, "named operator" policies, also called "nonowner" policies, insure a particular person, not motor vehicle. However, ORS 743.820 allows the parties to provide greater PIP benefits than required by statute, and we take Utah's admission to indicate that such an agreement governs Utah's PIP liability under Andrews' policy. Our conclusion could be different in a case where the carrier represented to the insured or certified to the Motor Vehicle Division that its broad form named operator policy issued to an insured who owned an Oregon-registered motor vehicle satisfied the requirements of ORS chapter 486, *see former* ORS 486.411(1)(a); *see also* ORS 806.080.

## BENEFIT APPORTIONMENT

Because we have assumed that the Utah policy provides PIP benefits to Andrews and have held that the Colonial policy provides PIP benefits to her, a secondary issue arises. That issue is whether either policy's PIP coverage is primary as against the other's. Such issues are resolved, to the extent possible, under ORS 743.810.

ORS 743.810 was first enacted in 1971 as section 4 of HB 1300. Or Laws 1971, ch 523, § 4. At that time the statute provided that benefits in respect of injuries to the named insured were primary, and benefits with respect to guest passengers injured while occupying the insured motor vehicle were excess. The 1971 legislative history provides insight into the applicability of this language to a situation such as that presented in this case. Cornelius Bateson, then Insurance Commissioner, wrote: "It should be noted here that if the guest or pedestrian has his own auto insurance policy it is primary and the policy of the driver is excess after use of collateral benefits." Presentation of HB 1300, Subcommittee

on Financial Affairs, House State and Federal Affairs Committee, Exhibit C at 2, 1971.[8]

ORS 743.810 was amended in 1973 (Or Laws 1973, ch 551, § 4) to change the primacy of benefits for guest passengers and "to make the automobile primary as to everybody that was in the car." Minutes, House Judiciary Committee 10 (April 17, 1973 — Testimony of Ed Smith, Farmers Insurance Group, HB 2537). These amendments were drafted by then Insurance Commissioner Lester Rawls, who explained that the changes to ORS 743.810 "would make the primary coverage on the automobile itself." Minutes, House Judiciary Committee 9 (April 25, 1973 — Testimony of Insurance Commissioner Rawls, HB 2537).

ORS 743.810(1) was substantially amended in 1975 (Or Laws 1975, ch 784, § 3) and now provides, in part:

"The personal injury protection benefits with respect to:

"(a)   The insured and members of his family residing in the same household injured while occupying the insured motor vehicle shall be primary.

"(b)   Passengers injured while occupying the insured motor vehicle shall be primary.

"* * * * *

"(d)   The insured and members of his family residing in the same household injured while occupying a motor vehicle not insured under the policy shall be excess."

A lengthy explanation of section 3 of HB 3199, which became ORS 743.810, Oregon Laws 1975, chapter 784, section 3, states, in part:

"This section assigns the obligation of PIP benefit payment when more than one insurance policy covers the injured person * * *.

"The 1975 Act makes the PIP benefits under a policy covering a particular car primary for all passengers in that car * * *." Commentary on Oregon Personal Injury Protection Benefits - 1975, House Labor and Business Affairs Committee, HB 3199, Exhibit H, at 1-2, April 28, 1975.

---

[8] An identical quotation appears in Minutes, Senate Judiciary Committee (May 19, 1971 — Exhibit A, Presentation of House Bill 1300 to Senate Committee on Judiciary at 4).

The significance of the 1973 and 1975 amendments to ORS 743.810 to the facts of this case cannot be overlooked. The message that is strongest is that the vehicle involved in the collision or accident is primary. In other words, a policy which covers the vehicle is primary as against a policy which does not cover the vehicle. Unfortunately, this is the fullest extent of legislative intent discernible that would be of any assistance in this case. We believe that the 1973 and 1975 amendments have rendered Commissioner Bateson's 1971 statement inapplicable. The principles basic to the 1971 and 1975 statutes are different in nature and focus. Whatever validity his statement had as an explanation of the 1971 statute is not applicable as indicative of legislative intent with regard to the 1975 statute.

■     In the instant case, the Andrews' vehicle was "the insured motor vehicle" under ORS 743.800 in Colonial's policy with Barron. We have also held that the Andrews *vehicle* was not "covered" under the Utah policy (and so could not be "the insured vehicle," ORS 743.800), but that Andrews was covered by PIP because of the agreement of the parties to the Utah policy. Applying ORS 743.810 is thus conclusive as to which PIP coverage is primary. Under ORS 743.810(1)(d), Andrews is Utah's insured, and thus her PIP benefits under the Utah policy are "excess." Under ORS 743.810(1)(b), Andrews is a passenger occupying the motor vehicle insured as a temporary substitute vehicle in Colonial's policy with Barron, and thus her PIP benefits under the Colonial policy are primary.

The decision of the Court of Appeals is affirmed in part and reversed in part. The decision of the trial court is reversed. This case is remanded to the trial court with instructions to enter summary judgment in favor of plaintiffs.

**PETERSON, C. J.,** dissenting.

I dissent.

The majority draws upon a definition from the uninsured motorist statutes in support of the conclusion that the ORS 743.800 term "the insured motor vehicle" includes a temporary substitute vehicle. I am convinced that none of the definitions contained in the uninsured motorist statutes, ORS 743.786 - 743.795, are statutorily made a part of the liability or

PIP coverage of every motor vehicle liability policy. The majority errs in drawing upon the definitions in ORS 743.792 in support of the conclusion that Andrews' car, while operated by Barron, was a temporary substitute automobile under ORS 743.792(2)(b), and therefore was "the insured motor vehicle" under ORS 743.800.

Oregon's present comprehensive uninsured motorist law was enacted in 1967. The minutes of a Senate hearing on House Bill 1506 contain this opening comment concerning the purpose of the law:

> "Senator Burns opened the discussion on Engrossed HB 1506. This bill is a guide to clarify and expand upon the definition in the insurance laws that relate to uninsured motorist coverage." Minutes, Senate Committee on Highways, May 23, 1967.

HB 1506 was enacted and became Chapter 482, 1967 Or Laws. Section 3(2) provided in part:

> "(2)   As used in this policy:
>
> "(a)   'Insured,' when unqualified, means *when applied to uninsured motorist coverage:*
>
> "(A)   * * *.
>
> "(B)   * * *.
>
> "(b)   'Insured vehicle,' except as provided in paragraph (c) of this provision, means:
>
> "(A)   * * *.
>
> "(B)   * * *." (Emphasis added.)

The majority notes that the italicized language of subsection (2)(a) does not appear in subsection (2)(b), and concludes that the definitions of subsection (2)(b) therefore are part of the liability and PIP coverage of every motor vehicle liability policy issued in Oregon.

I am convinced that the provisions of ORS 743.786 - 743.795 are limited to the mandatory uninsured motorist coverage plan the legislature had in mind in enacting HB 1506. The absence of the italicized words "when applied to uninsured motorist coverage" in subsection (2)(b) of section 3 of HB 1506 does not invalidate my conclusion.

The permeating premise underlying HB 1506 was the

enactment of a comprehensive plan of uninsured motorist coverage. The PIP law had not yet been enacted. It was first enacted in 1971.

There is not a slab of concrete evidence that the legislature, in enacting HB 1506 in 1967, had in mind the creation of a mandatory statutory definition of the term "insured vehicle" that applied to all motor vehicle insurance coverages - liability, uninsured motorist, medical payments, or collision. I rely upon the following legislative history.

Two years earlier, in 1965, the Legislative Assembly enacted an uninsured motorist law, HB 1041. It was vetoed. On April 1, 1965, the Senate Financial Affairs Committee considered HB 1041. At that time, section 3(2)(a) provided in part: "(a) 'Insured,' when unqualified, means: * * *." Section 3(2)(b) provided in part: "(b) 'Insured vehicle,' except as provided in paragraph (c) of this provision, means: * * *."

The minutes of the Senate Financial Affairs Committee for April 1, 1985, contain this entry:

> *"HB 1041*    Relating to insurance - requires minimum policy provisions for uninsured motorist endorsement on automobile insurance policies.
>
> "Mr. John Steelhammer appeared before the committee and stated that he had some amendments which he wished to propose. He stated that he represented the American Reciprocal Ins. Ass'n. of Kansas City and his company wanted it clearly defined in HB 1041 *that this refers only to uninsured motorist insurance and not liability insurance.* His amendments would spell this out very clearly." (Emphasis added.)

The amendment sought by Mr. Steelhammer (and which was made) added the words "when applied to uninsured motorist coverage" now found in subsection (2)(a). Steelhammer suggested no similar definition of "insured vehicle" in subsection 2(b), or in any other definition in section 3.

The failure to make a similar change in subsection 2(b) was simply a legislative oversight. As stated earlier, there is no suggestion in the entire legislative history of the uninsured motorist legislation, in 1965 or 1967, that the legislature intended that the definition of "insured vehicle" in subsection (2)(b) apply to all coverages in every motor vehicle liability

policy, much less that the definition apply to PIP coverage, which was not enacted until 1971.

Granted, the limiting clause of subsection 2(a) is absent from 2(b). Had the legislature intended such a far-reaching effect, the legislative history would show it. Keep in mind that section 3 of the 1967 legislation begins: "Every policy required to provide the coverage specified in section 2 of this 1967 Act *shall provide uninsured motorist coverage * * *.*" (Emphasis added.) Subsection 2 of section 3 contains detailed provisions relating to definitions of "insured," "insured vehicle," "uninsured vehicle," "hit-and-run vehicle," "phantom vehicle," "bodily injury," "occupying," and "vehicle." The most logical conclusion is that Mr. Steelhammer, in suggesting the change, intended the change to clarify that the entire legislation concerned only the uninsured motorist scheme. This would have been accomplished by adding the words "when applied to uninsured motorist coverage" in the first sentence of subsection (2) of section 3, so that the first clause would read: "As used in this policy, when applied to uninsured motorist coverage:" We should not perpetuate the error.

How, then, should this case be decided? In a nutshell, my view of the PIP statutes is this: As used in ORS 743.800, the term "the person insured" means "the named insured." The term "the insured motor vehicle" means the vehicle listed in the declarations, whether designated by express description or by class. The construction of the PIP statutes set forth below gives meaning and coherence to the entire PIP scheme, with the result that each and every PIP statute is applied according to its clear and intended terms.[1]

The PIP statutes, ORS 743.800 to 743.835, are part of a comprehensive motor vehicle insurance plan. The plan is based in part upon the requirement that every person operating a vehicle be "insured * * * under a motor vehicle liability insurance policy." ORS 486.075(1).

Oregon requires that every motor vehicle liability policy have these coverages:

　　1.　Liability coverage with specified minimum limits

---

[1] All references in the opinion, unless otherwise indicated, are to statutes in effect in 1980.

and specified terms. Former ORS chapter 486, repealed by Or Laws 1985, ch 16, and Or Laws 1983, ch 338. *See* present ORS 743.776 to 743.785; ORS chapter 806.

2. Uninsured motorist coverage. ORS 743.786-743.795.

3. PIP coverage. ORS 743.800-743.835.

The PIP scheme contemplates that every person injured while riding in a vehicle and pedestrians struck by any motor vehicle would be entitled to PIP benefits from some insurer, without regard to fault. The legislature knew that situations would arise in which an injured person would be entitled to benefits under more than one policy. It enacted ORS 743.810 to specify which policy would be "primary."

It is worth noting that this is not a situation in which a policy is to be construed against the insurer who writes it. We are construing a statute. I turn to a discussion of the specific meaning of the ORS 743.800 terms "the insured person" and "the insured motor vehicle."

ORS 743.800 requires that every motor vehicle liability policy issued for delivery in this state provide PIP benefits to four classes of injured persons:

Class 1: "*the person* insured thereunder:

Class 2: "members of *that person's* family residing in the same household"

Class 3: "passengers occupying *the insured motor vehicle*"

Class 4: "pedestrians struck by *the insured motor vehicle.*" (Emphasis added.)

The liability coverages of most automobile liability policies contain broad coverage that extends liability protection to persons other than the named insured while using the described vehicle. The liability coverages also normally extend liability coverage to the use, by the named insured, of vehicles other than the auto described in the declarations section. For example, the Colonial policy extends liability coverage to the named insured if he operates a car owned by someone else "if such use is with the permission of the owner." The liability

coverage of the Colonial policy also extends liability coverage to additional unnamed insureds - "any other person" - while using the car described in the declarations.

ORS 743.800 was designed to provide this PIP protection:

1. Protection for *the insured* - the person(s) buying the policy. In this case, under the Colonial policy, that is Barron. ORS 743.800(1) uses the term "*the* person insured thereunder," not "*any* person insured thereunder."

2. Protection for "members of *the insured's* family residing in the same household." The legislature did not say "*any* insured's family."

3. Protection for "passengers occupying *the insured motor vehicle.*" Here, the reference to "*the* insured motor vehicle" most likely refers to the car with relation to which the insurance is purchased, usually the vehicle named in the declarations. As far as Barron is concerned, that means not Andrews' car, but Barron's 1968 Plymouth.

4. Protection for "pedestrians struck by *the* insured motor vehicle." Here again, I believe that the virtually inescapable conclusion is that the legislature was referring to the automobile described in the declarations, in this case, the insured's (Barron's) private passenger motor vehicle.

This conclusion is borne out by the language of current ORS 743.800(2)(a).[2] It provides PIP protection for

---

[2]ORS 743.800(2) currently reads:

"(2) Personal injury protection benefits apply to a person's injury or death resulting:

"(a) In the case of the person insured under the policy and members of that person's family residing in the same household, from the use or maintenance of any motor vehicle, except the following vehicles:

"* * * * *.

"(b) In the case of a passenger occupying or a pedestrian struck by the insured motor vehicle, from the use or maintenance of the vehicle.

I do not believe that I am disingenuous in relying on the "any motor vehicle" language currently in ORS 743.800(2)(a). Former ORS 743.800 used the phrase "injured in a motor vehicle accident." ("* * * shall provide to *the person* insured thereunder and members of *that person's* family injured in a motor vehicle accident * * *). Insofar as this case is concerned, I read the term "injured in a motor vehicle accident" to mean essentially the same as "injury * * * resulting * * * from the use or maintenance of *any* motor vehicle."

"the person insured under the policy and members of that person's family residing in the same household" if injury results from the use or maintenance of "*any* motor vehicle." Broad coverage. Passengers' PIP benefits are limited to passengers "occupying * * * *the insured* motor vehicle." Pedestrians' benefits are limited to pedestrians "struck by *the insured* motor vehicle. The legislature intended to limit benefits of pedestrians and passengers other than members of the insured's family to injuries sustained from or in connection with the use of "*the insured* vehicle." But family members of the insured are entitled to benefits if injured from using "*any* motor vehicle." The legislature had in mind the difference between "*any* insured vehicle" and "*the* insured vehicle." ¶

The final PIP statute I cite to support my conclusion is ORS 743.810(1)(a) and (d). It reads:

"(1)   The personal injury protection benefits with respect to:

"(a)   The insured and members of his family residing in the same household injured while occupying the insured motor vehicle shall be primary.

"* * * * *.

"(d)   The insured and members of his family residing in the same household injured while occupying a motor vehicle not insured under the policy shall be excess."

The legislature obviously had in mind two classes of "insured vehicles." One class is "the insured motor vehicle," which I maintain is the vehicle described in the declarations. The second class is a vehicle with respect to the use of which another insurance policy provides PIP benefits to a person. ORS 743.810(1)(d).

ORS 743.810(1) aims to define which policy is primary when two or more policies concurrently provide PIP benefits to a person. If the named insured or members of his family are injured while riding in the car described in the declarations, the PIP insurance on that car is primary.

But persons regularly ride in and sometimes drive other persons' cars. A common example is when a named insured who owns an automobile described in Policy. *A* is riding as a passenger in a car owned by another person and described in policy *B*. The named insured would be entitled to

PIP benefits under his policy, policy *A,* because he was riding in *"any* motor vehicle." Present ORS 743.800(2)(a). He likely also would be entitled to benefits under policy *B* because of his status as "a passenger occupying * * * *the insured* motor vehicle." Under policy *B,* the host car would be *"the insured* motor vehicle."

Under those facts, ORS 743.810(1)(d) provides that policy *B* would be primary. That is the clear intent of the legislature.

I attribute some discrimination to the legislature. In using the words "the insured motor vehicle," the legislature likely meant the vehicle described in the declarations section of the policy. In using the term "any motor vehicle" they included both "the insured motor vehicle" and any other motor vehicle.

The legislature had in mind a comprehensive insurance scheme under which (1) all drivers would have liability coverage, and (2) all drivers and passengers, and all pedestrians struck by any motor vehicle would be entitled to PIP benefits. The legislature contemplated but one recovery when more than one policy applied, and in ORS 743.810 directed which insurer would pay if more than one policy applied.

The Court of Appeals in effect held that the term "the insured motor vehicle" means *any* motor vehicle the operation of which is covered by the liability coverage of the policy. While this analysis has a fetching simplicity, it in part renders ORS 743.810 meaningless.

For example, under that analysis, if Andrews' car were designated in the declarations section of her policy and extended liability coverage to permissive users such as Barron, and Barron were injured while driving her car, under ORS 743.810(1)(a) Andrews' car would be "the insured motor vehicle" under both her policy and Barron's policy. Both policies would be "primary" under ORS 743.810(1)(a).

In a sense, that was the result of the Court of Appeals' analysis. It held:

> "Both Utah's and Colonial's limitations on PIP coverage being invalid, Andrews is properly viewed as '[t]he insured * * * injured while occupying the insured motor vehicle * * *';

therefore, under ORS 743.810(1)(a), the Utah policy is primary. However, Andrews was also a '[p]assenger injured while occupying the insured motor vehicle * * *' under the Colonial policy, and her coverage is therefore also primary under the Colonial policy. ORS 743.810(1)(b). Having concluded that both policies are primary with respect to Andrews' injuries, we think it appropriate to apply the rule of *Lamb-Weston v. Ore. Auto Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959). In that case, the court required the insurance companies to prorate the loss in accordance with the ratio of the loss to their applicable policy limits. * * *" *Utah Home Fire Ins. v. Colonial Ins.,* 64 Or App 617, 622-23, 669 P2d 381, 384 (1983).

ORS 743.810(1)(d) was intended to apply to such a situation. Under the last hypothetical set forth above, under ORS 743.810(1)(d), Barron would be occupying a vehicle the operation of which would be covered under both the Colonial and Utah policies, and PIP benefits would extend to Barron under both policies. Under my construction of the PIP statutes, under ORS 743.810(1)(d), even though both the Utah policy and the Colonial would extend liability and PIP coverage to Barron, the Colonial policy would be excess because Barron is occupying a vehicle not named in the declarations of the Colonial policy.

The Utah "broad form named operator" form states that the policy provides liability coverage "only [to] the named insured * * * while driving any * * * automobile * * *." That ORS 486.411 and ORS 486.506 permit,[3] and that Utah's policy

---

[3]ORS 486.411(1) provides:

"Proof of future responsibililty may be given by filing with the division for the benefit of the person required to furnish such proof:

"(1) A certificate of insurance issued by an insurance carrier doing business in this state, showing that the insured has procured and that there is in effect a motor vehicle liability policy for the limits of future responsibility either:

"(a) Designating by explicit description or by appropriate reference all motor vehicles with respect to which coverage is granted thereby and insuring the named insured and all other persons using any such motor vehicle with the insured's consent against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of any such motor vehicle; or

"(b) Insuring such person against such loss arising out of the use by the person of any motor vehicle not owned by the person."

ORS 486.506(1) provides:

may have been written to provide liability coverage to its insured while driving *any* car is not inconsistent with the analysis. The vehicle described in the declarations section of the Utah policy is the vehicle required by ORS 486.411(1) to be described either "by explicit description or appropriate reference" (ORS 486.411(1)(a)) *or* "any motor vehicle" used by the insured (ORS 486.411(1)(b)). The term "the insured vehicle" in ORS 743.800 embraces the statutory definition of ORS 486.411(1) to include any car used by the named insured, who is, under the Utah policy, Andrews.

Therefore:

1. Andrews was the named insured under her Utah policy. As such, she was entitled to PIP benefits under the Utah policy because she was the named insured and because she was "injured in a motor vehicle accident." ORS 743.800.

2. Andrews was not entitled to benefits under the Colonial policy because she was not riding in "the insured motor vehicle" under the Colonial policy. Under the Colonial policy "the insured vehicle" is the vehicle named in the declarations, Barron's 1968 Plymouth.

3. Andrews' insurer, Utah, is not entitled to recover any part of the amounts paid to Andrews under the Utah PIP coverage because Andrews is not entitled to benefits under the Colonial policy.

The majority errs in looking at the uninsured motorist definitions of ORS 743.792 to determine whether the Colonial policy applies under the PIP statute. In deciding this case, we should look only at the facts of the accident and the PIP statutes. Once the decision is made that the Colonial PIP coverage is statutorily deficient, then we should look only at the PIP statutes for guidance.

I would reverse the Court of Appeals and affirm the trial court.

---

"(1) Every certificate of insurance shall:

    "(a) Be dated as of the date of the motor vehicle policy for which it is given.

    "(b) Contain the policy number.

    "(c) Describe all vehicles covered by the policy, unless such policy is issued with respect to all vehicles operated by the assured."